# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re HONDA IDLE STOP LITIGATION<br><br>This Document Relates to:<br>ALL ACTIONS | Master File No.: 2:22-cv-04252<br><br>Hon. Mark C. Scarsi<br><br><u>CONSOLIDATED ACTION</u> |

## <u>CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE</u>

157147980.1

# TABLE OF CONTENTS

I.      DEFINITIONS ................................................................................9

II.     REQUIRED EVENTS ...............................................................17

III.    SETTLEMENT TERMS ............................................................19

IV.     CLASS NOTICE AND RELATED PROVISIONS ..................................22

V.      NOTICE / SETTLEMENT ADMINISTRATORS ..................................26

VI.     REQUESTS FOR EXCLUSION BY CLASS MEMBERS ....................28

VII.    OBJECTIONS BY SETTLEMENT CLASS MEMBERS ......................30

VIII.   RELEASE, DISMISSAL OF ACTION, AND JURISDICTION OF
        COURT ...........................................................................34

X.      REPRESENTATIONS, WARRANTIES, AND COVENANTS ............36

XI.     MISCELLANEOUS PROVISIONS ...........................................37

## <u>TABLE OF EXHIBITS</u>

**Document**                                                                    **Exhibit No.**

Preliminary Approval Order ............................................................................ 1

Direct Mailed Notice.................................................................................... 2

Long Form Notice......................................................................................... 3

Notice Plan ................................................................................................... 4

Claim Form ................................................................................................... 5

Settlement Administrator's Declaration ....................................................... 6

Final Judgment............................................................................................. 7

Final Order ................................................................................................... 8

Plaintiffs Kevin Bishop, Janice Stewart, Brandon Derry, Jeff Kaminski, Devron Elliot, Marilyn Thomas, Daniel Rock, Antoinette Lanus, Sirous Pourjafar, Melissa Howell, David Jew, Sharon Marie Johnson, Liz Simpson, Hamid Balooki, Malik Barrett, Sean Crary, Sadia Durrani, Abby O'Neill, Latasha Ransome, and Ali Qureshi ("Plaintiffs" or "Class Representatives"), on behalf of themselves and all others similarly situated and by and through their counsel, and Defendant American Honda Motor Co., Inc. ("AHM" or "Defendant"), by and through its counsel, hereby enter into this Settlement Agreement and Release ("Settlement Agreement"), subject to Court approval. The Parties, in consideration of the mutual promises, agreements, and covenants contained herein, the sufficiency and receipt of which are hereby acknowledged, stipulate and agree as follows:

**WHEREAS**, on June 21, 2022, Plaintiff Hamid Bolooki filed a class action complaint ("Complaint") [Dkt 1.] in the United States District Court for the Central District of California, captioned *Bolooki et al. v. American Honda Motor Co., Inc.*, Case No. 22-cv-04252-MCS-SK (the "Action" or "Litigation"), on behalf of himself and a putative nationwide class and a Florida subclass asserting claims for (1) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* ("Mag-Moss"), (2) violation of the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. §§ 501.201 *et seq.*), (3) Breach of Express Warranty (Fla. Stat. §§ 672.313 and 680.21), (4) breach of the implied warranty of merchantability (Flat. Stat. §§ 672.101 *et seq.*), (5) fraudulent concealment/omission, and (6) unjust enrichment.

**WHEREAS**, on September 16, 2022, Plaintiff Hamid Bolooki, along with additional plaintiffs Andre Williams, Abby O'Neill, Antoinette Lanus, Drew Taranto,

Latasha Ransome, Sirous Pourjafar, Malik Barrett, and Ali Qureshi filed a First Amended Class Action Complaint [Dkt. 42] ("FAC") in the Litigation, on behalf of themselves and a putative nationwide class and California, Florida, Illinois, Louisiana, New Jersey, New York, Ohio, and Rhode Island subclasses asserting claims for (1) violation of Mag-Moss; *for the Florida subclass* claims for (2) violation of the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. §§ 501.201 *et seq.*), (3) Breach of Express Warranty (Fla. Stat. §§ 672.313 and 680.21), (4) breach of the implied warranty of merchantability (Flat. Stat. §§ 672.101 *et seq.*), (5) fraudulent concealment/omission, (6) unjust enrichment; *for the Illinois subclass claims for* (7) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 Ill. Comp. Stat. 505/1 *et seq.*), (8) breach of express warranty (810 Ill. Comp. Stat. 5/2-313 and 5/2A-210), (9) fraudulent omission, (10) unjust enrichment; *for the Louisiana subclass claims for* (11) Redhibition (La. Civ. Code Arc. 2520 *et seq.*), (12) breach of warranty for fitness for ordinary use (La. Civ. Code Art. 2524), (13) breach of express warranty (La. R.S. § 9:2800.51 *et seq.*), (14) fraudulent omission, (15) violation of the Louisiana Unfair Trade Practices Act (La. Rev. Stat. Ann. §§ 51.1401 *et seq.*), (16) unjust enrichment; *for the Ohio subclass claims for* (17) violation of the Ohio Consumer Sales Practices Act (Ohio Rev. Code Ann. §§ 1345.01 *et seq.*), (18) breach of express warranty (Ohio Rev. Code Ann. §§ 1302.26 and 1310.17), (19) breach of implied warranty in tort, (20) fraudulent omission, (21) unjust enrichment; *for the Rhode Island subclass claims for* (22) violation of the Rhode Island Unfair Trade Practice and Consumer Protection Act (R.I. Gen. L. § 6-13.1-1 *et seq.*), (23) breach of express warranty (R. I. Gen. L. § 6A-2-313), (24) breach of the implied warranty of merchantability (R. I. Gen. L. § 6A-

2-314), (25) fraudulent omission, (26) unjust enrichment; *for the California subclass claims for* (27) violation of the California Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750 *et seq.*), (28) violation of the Song-Berverly Consumer Warranty Act for Breach of Express Warranty (Cal. Civ. Code §§ 1790 *et seq.*), (29) violation of the Song-Beverly Consumer Warranty Act for Breach of Implied Warranty (Cal. Civ. Code §§ 1790 *et seq.*), (30) fraudulent omission, (31) unjust enrichment, (32) violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 *et seq.*); *for the New Jersey subclass claims for* (33) violation of the New Jersey Consumer Fraud Act (N.J. Stat. §§ 56:8-1 *et seq.*), (34) breach of implied warranty of merchantability (N.J. Stat. §§ 12A:2-314 and 12A:2A-212), (35) fraud omission, (36) unjust enrichment; *for the New York subclass claims for* (37) violation of New York General Business Law, Deceptive Trade Practices Act (N.Y. Gen. Bus. L. § 349), (38) breach of express warranty (N.Y. U.C.C. §§ 2-313 and 2-A-210), (39) breach of implied warranty of merchantability (N.Y. U.C.C. §§ 2-314 and 2-A-212), (40) fraudulent omission, and (41) unjust enrichment.

**WHEREAS**, on April 14, 2023, Plaintiffs Hamid Bolooki, Andre Williams, Abby O'Neill, Antoinette Lanus, Drew Taranto, Latasha Ransome, Sirous Pourjafar, Malik Barrett, and Ali Qureshi, along with additional plaintiffs John Cooper Ilya Birman, Yosef Ben Zev, and Deneen Nock filed a First Consolidated Amended Complaint [Dkt. 73] ("CFAC") in the Litigation, on behalf of themselves and putative state classes in California, Florida, Illinois, Louisiana, New Jersey, New York, North Carolina, Ohio, and Rhode Island asserting the same claims as those in the FAC (less the nationwide claim under Mag-Moss), *plus* additional claims *for the North Carolina subclass* for (1) violation of the North

3

Carolina Unfair Deceptive Trade Practices Act (N.C. Gen. Stat. §§ 75-1.1 *et seq.*), (2) breach of implied warranty of merchantability (N.C. Gen. Stat. § 25-2-101 *et seq.*), (3) fraudulent omission, and (4) unjust enrichment.

**WHEREAS**, on May 12, 2023, Plaintiffs Hamid Bolooki, Andre Williams, Abby O'Neill, Antoinette Lanus, Drew Taranto, Latasha Ransome, Sirous Pourjafar, Malik Barrett, Ali Qureshi, John Cooper, Ilya Birman, Yosef Ben Zev, and Deneen Nock, with additional plaintiffs Jeanice Stewart, Gabriel Arambula, Sean Crary, Kevin Bishiop, Liz Simpson, Jeff Kaminski, Devron Elliot, Ocatavio Ayala, Brandon Derry, Etinosa O'Basuyi, Daniel Rock, Sharon Marie Johnson, Sadia Durrani, Scott Stapelton, Marilyn Thomas, Melissa Howell, and David Jew filed a Second Consolidated Amended Complaint [Dkt. 82] ("SCAC") in the Litigation, on behalf of themselves and state classes in Alabama, California, Connecticut, Delaware, Florida, Illinois, Indiana, Louisiana, Maryland, Nevada, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, Texas, Virginia and Washington asserting the same claims as those in the CFAC *plus* additional claims *for the Alabama subclass* for (1) violation of the Alabama Deceptive Trade Practices Act (Ala. Code § 8-19-1 *et seq.*), (2) breach of implied warranty of merchantability (Ala. Code §§ 7-2-314 and 7-2a-314), (3) fraudulent omission, (4) unjust enrichment; *for the Connecticut subclass* for (1) violation of the Connecticut Unfair Trade Practices Act (Conn. Gen. Stat. §§ 42-110A *et seq.*), (2) breach of implied warranty of merchantability (Conn. Gen. Stat. § 42A-2-314), (3) fraudulent omission, (4) unjust enrichment; *for the Delaware subclass* for (1) violation of the Delaware Deceptive Trade Practices Act (Del. Code Ann. Title 6, §§ 2501 *et seq.*), (2) breach of implied warranty of

4

merchantability (Del. Code Ann. Title 6 §§ 2-314 *et seq.*), (3) fraudulent omission, (4) unjust enrichment; *for the Indiana subclass* for (1) violation of the Indiana Deceptive Consumers Sales Act (Ind. Code Ann. §§ 24-5-0.5-1 *et seq.*), (2) breach of implied warranty of merchantability (Ind. Code §§ 26-1-2-314 and 26-1-2.1-212), (3) fraudulent omission, (4) unjust enrichment; *for the Maryland subclass* for (1) violation of the Maryland Consumer Protection Act (Md. Code Ann. Comm Law §§ 13-101 *et seq.*), (2) beach of implied warranty of merchantability (Md. Code Ann. Com. Law §§ 2-314 (*et seq.*), (3) fraudulent omission, (4) unjust enrichment; *for the Nevada subclass* for (1) violation of the Nevada Deceptive Trade Practices Act (Nev. Rev. Stat. §§ 598.0903 *et seq.*), (2) breach of implied warranty of merchantability (Nev. Rev. Stat. §§ 104.2314), (3) fraudulent omission, (4) unjust enrichment; *for the New Hampshire subclass* for (1) violation of the New Hampshire Consumer Protection Act (N.H. Rev. Stat. §§ 358-A:1 *et seq.*), (2) breach of implied warranty of merchantability (N.H. Rev. Stat. Ann. §§ 382-A:2-314 *et seq.*), (3) fraudulent omission, (4) unjust enrichment; *for the Pennsylvania subclass* for (1) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection law(73 P.S. §§ 201-1 *et seq.*), (2) breach of implied warranty of merchantability (13 PA. Cons. Stat. Ann. §§ 2314), (3) fraudulent omission, (4) unjust enrichment; *for the Texas subclass* for (1) violation of the Texas Deceptive Trade Practices Consumer Protection Act (Tex. Bus. & Com. Code §§ 17.41 *et seq.*), (2) breach of implied warranty of merchantability (Tex. Bus. & Com. Code Ann. §§ 2.101 *et seq.*), (3) fraudulent omission, (4) unjust enrichment; *for the Virginia subclass* for (1) violation of the Virginia Consumer Protection Act (Va. Code Ann. §§ 59.1-196 *et seq.*), (2) breach of implied warranty of

merchantability (Va. Code Ann. § 8.2-314), (3) fraudulent omission, (4) unjust enrichment; and *for the Washington subclass* for (1) violation of the Washington Consumer Protection Act (Wash. Rev. Code Ann. §§ 19.86.010 *et seq.*), (2) breach of implied warranty of merchantability (Wash. Rev. Code Ann. §§ 62A.2-314 *et seq.*), (3) fraudulent omission, (4) unjust enrichment.

**WHEREAS,** on October 11, 2023, Plaintiffs Hamid Bolooki, Andre Williams, Abby O'Neill, Antoinette Lanus, Drew Taranto, Latasha Ransome, Sirous Pourjafar, Malik Barrett, Ali Qureshi, Deneen Nock, Jeanice Stewart, Gabriel Arambula, Sean Crary, Kevin Bishiop, Liz Simpson, Jeff Kaminski, Devron Elliot, Ocatavio Ayala, Brandon Derry, Etinosa O'Basuyi, Daniel Rock, Sharon Marie Johnson, Sadia Durrani, Marilyn Thomas, Melissa Howell, and David Jew filed a Third Consolidated Amended Complaint [Dkt. 111] ("TCAC") in the Litigation, on behalf of themselves and state classes in Alabama, California, Connecticut, Delaware, Florida, Illinois, Indiana, Louisiana, Maryland, Nevada, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, Texas, Virginia and Washington subclasses asserting the same claims as those in the SCAC.

**WHEREAS,** on December 3, 2024, Plaintiffs Hamid Bolooki, Janice Stewart, Sirous Pourjafar, Sean Crary, Kevin Bishop, Liz Simpson, Abby O'Neill, Jeff Kaminski, Antoinette Lanus, Devron Elliot, Brandon Derry, Malik Barrett, Drew Taranto, Etinosa O'Basuyi, Daniel Rock, Sharon Marie Johnson, Sadia Durrani, Marilyn Thomas, Melissa Howell, and David Jew filed a Fourth Consolidated Amended Complaint [Dkt. 209] ("4CAC") in the Litigation that dropped their New York and Rhode Island class claims in

6

the TCAC.

**WHEREAS,** Plaintiffs and AHM recognize the outcome of the Litigation and the claims asserted in the Complaint, FAC, CFAC, SCAC, TCAC, 4CAC (together "Asserted Claims") are uncertain, and that pursuing the Litigation to judgment would entail substantial cost, risk, and delay;

**WHEREAS**, the Parties have explored and discussed at length the factual and legal issues in the Litigation and have participated in mediation with a well-respected mediator, Anthony Piazza of Mediated Negotiations, Inc. concerning the issues and Asserted Claims raised by Plaintiffs in the Litigation and AHM's defenses thereto, and have agreed to a global final settlement of the Action that renders the need for further litigation unnecessary;

**WHEREAS**, for purposes of this settlement only, the Parties agree to the certification of a Settlement Class ("Settlement Class" as defined in section I (12), below).

**WHEREAS**, the Parties desire to compromise and settle all issues, claims, and/or facts asserted in any iteration of the operative pleadings in the Litigation, or that could have been asserted by Plaintiffs, based upon the facts alleged in the Litigation by or on behalf of members of the Settlement Class;

**WHEREAS**, Plaintiffs, by and through Class Counsel, have: (a) made a thorough and extensive investigation of the facts and circumstances surrounding the allegations asserted in the Litigation; (b) engaged in investigation and discovery of the Claims asserted in the Litigation, including discovery obtained by Plaintiffs in connection with the Action and prior to execution of this Agreement, and (c) evaluated and considered the law applicable to the Asserted Claims in the Litigation, including the defenses that AHM likely

7

would assert;

**WHEREAS**, AHM does not believe Plaintiffs' Claims and allegations are meritorious and has denied and continues to deny any and all defect and/or safety claims alleged by Plaintiffs, and has denied and continues to deny that it is legally responsible or liable to Plaintiffs or any member of the Class for any of the matters and/or Claims asserted in this Litigation, but has concluded that settlement is desirable to avoid the time, expense, and inherent uncertainties of defending protracted litigation and to resolve, finally and completely, all pending and potential Claims of Plaintiffs and all members of the Class relating to claims which were or could have been asserted by Plaintiffs and the Class in this Litigation relating to Claims, the alleged practices, and claimed defect(s) at issue;

**WHEREAS**, Class Counsel are experienced in this type of class litigation, recognize the costs and risks of prosecution of this Litigation, and believe that it is in Plaintiffs' interest, and the interest of all Class Members, to resolve this Action, and any and all Asserted Claims against AHM arising from the conduct alleged in the Action, and in this Settlement Agreement;

**WHEREAS**, the Parties agree that the proposed Settlement is fair, adequate, and reasonable;

**WHEREAS**, significant arm's-length settlement negotiations have taken place between the Parties and, as a result, this Settlement Agreement has been reached without collusion, and is subject to the Court approval process set forth herein;

**WHEREAS**, the undersigned Parties believe this Settlement Agreement offers significant benefits to Class Members and is fair, reasonable, adequate and in the best

interest of Class Members, and treats Class Members equitably in relation to each other; and

**WHEREAS**, this Settlement Agreement is made and entered into by and between Plaintiffs, individually and on behalf of the Class, and AHM;

**NOW, THEREFORE**, it is hereby stipulated and agreed, by and between the undersigned Parties, as follows:

## I.  <u>DEFINITIONS</u>

As used in this Settlement Agreement, the following terms shall have the meaning set forth below. Where appropriate, terms used in the singular shall be deemed to include the plural and vice versa.

**1)**  **Action**. "Action" means the lawsuit captioned *Bolooki et al. v. American Honda Motor Co., Inc.*, Case No. 22-cv-04252-MCS-SK, and any and all lawsuits consolidated within this case number under the omnibus case title "*In re Idle Stop Litigation*."  The Action may also be referred to in this Settlement Agreement as the "Litigation."

**2)**  **AHM**. "AHM" means American Honda Motor Co., Inc., the defendant in this Action.

**3)**  **AIS No-Restart.**  "AIS No Restart" means the condition where, under certain circumstances, after coming to a stop and engaging idle stop, a Class Vehicle's engine may not restart automatically, as detailed in the Service Bulletins.

**4)**  **Authorized Acura Dealership.**  "Authorized Acura Dealership" means a dealership authorized by AHM to sell and service Acura vehicles in the United States.

5)      **Authorized Honda Dealership.**  "Authorized Honda Dealership" means a dealership authorized by AHM to sell and service Honda vehicles in the United States.

6)      **Claim**. "Claim" means a request for reimbursement for an Out-Of-Pocket Cost.

7)      **Claim Deadline**.  "Claim Deadline" means the ninety day (90) period after the date of entry of the Final Approval Order during which Class Members may make a Claim for Out-of-Pocket Costs incurred prior to receipt of the Class Notice for past Out-of-Pocket Costs that were not otherwise reimbursed/reimbursable under the Warranty Extension.

8)      **Claimant**.  "Claimant" means any Class Member who submits a Claim.

9)      **Claim Form**. "Claim Form" means a form to be used by Class Members to make a Claim.

10)     **Claim Processing.** "Claim Processing" means the process of (i) establishing and maintaining a Settlement Website; (ii) setting up and maintaining a call-in number to answer Class Member questions; (iii) receiving Claims for processing  and payment; (iv) matching the vehicle identification number (VIN) to the Claim; (v) determining if the Claim asserts valid Out-Of-Pocket Costs supported by Required Documentation; (vi) determining if the Claim has been previously paid in whole or in part by AHM through goodwill payments, warranty payments, or under the Warranty Period; (vii) determining if the Class Member previously had released any claims against AHM as a result of a settlement of a claim or lawsuit; (viii) conducting a data search to determine if the Class Vehicle previously has been previously involved in an accident or deemed a total

loss (i.e. salvage) prior to a Class Member incurring an Out-of-Pocket Cost; (ix) entering data into the AHM warranty database concerning the Class Vehicle; and (x) verifying no other exclusions in this Settlement apply.

11)      **Class Counsel**. "Class Counsel" means Adam J. Levitt of Dicello Levitt LLP, H. Clay Barnett, III of Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., and Andrew T. Trailor of Andrew T. Trailor, P.A.

12)      **Class Counsels' Fees and Expenses**. "Class Counsels' Fees and Expenses" means the reasonable attorneys' fees and litigation costs that Class Counsel will seek by way of motion made to the Court.

13)      **Class Notice**. "Class Notice" means the Court-approved form of notice to the Class mutually prepared and agreed upon by the Parties, informing the Class of, among other things, (i) the preliminary approval of the Settlement; (ii) the scheduling of the Final Approval Hearing; (iii) their opportunity to participate in, object to, or exclude themselves from, the Settlement; (iv) their opportunity to submit a Claim; and (v) benefits available and/or implemented by AHM under the Settlement. The Class Notice means the same thing as the Mailed Notice and includes any postcard notice sent to the Class and the long form notice that will be posted on the Settlement Website.

14)      **Class Notice Date**. "Class Notice Date" means the date by which the Notice Administrator completes the mailing of a copy of the Class Notice by first class mail, postage prepaid, to each member of the Settlement Class.

15)      **Class Vehicle(s)**. "Class Vehicles" means 2015-2020 Acura TLXs, 2016-2020 Acura MDXs, 2016-2021 Honda Pilots, 2019-2021 Honda Passports, and 2020-2021

Honda Ridgelines sold or leased in the United States equipped with a NP0 engine, nine-speed automatic transmission, and equipped with the Auto Idle Stop ("AIS") feature. Any vehicle that has already received a starter motor assembly replacement with the "A53" starter motor assembly for free under warranty is not a "Class Vehicle" except for purposes of submitting a Claim for reimbursement of "Out-of-Pocket Costs" as defined herein.

16) **Complaint.** "Complaint" means the Complaint, FAC, CFAC, SCAC, TCAC, 4CAC, or Fifth Consolidated Amended Complaint ("5CAC") [Dkt. 242] filed in the Action (individually or in the aggregate), as well as any additional complaints that may be filed in the Action to conform the pleadings to this Settlement.

17) **Court**. "Court" means the United States District Court for the Central District of California, the Hon. Mark C. Scarsi, or his duly appointed successor.

18) **Defendant's Counsel**. "Defendant's Counsel" means Lewis Brisbois Bisgaard & Smith LLP.

19) **Effective Date.** "Effective Date" means the date by when: (1) the Court's Final Approval Order is a final, appealable judgment; *and* (2) either (a) no appeal has been taken from the judgment relating to the merits of the settlement as of the date on which all times to appeal therefrom have expired, or (b) an appeal or other review proceeding of the judgment relating to the merits of the settlement having been commenced, such appeal or other review is finally concluded and no longer is subject to review by any court, whether by appeal, petitions for rehearing or re-argument, petitions for rehearing *en banc*, petitions for writ of certiorari, or otherwise, and such appeal or other review has been finally resolved in a manner that affirms the Final Approval Order in all material respects.

**20)** **Extended Claim Period.** "Extended Claim Period" means (a) for 2015 model year TLX vehicles, the additional twenty-four (24) month period after the expiration of the Warranty Period for each such vehicle (all based on the original date of purchase for each such vehicle), during which a free valve adjustment and Replacement Starter related to the AIS No-Restart condition may be performed for a 2015 model year TLX vehicle under the Service Bulletin at an Authorized Acura Dealership, and (b) for 2016 model year Honda Pilot, Acura TLX, and Acura MDX vehicles, the additional eighteen (18) month period after the expiration of the Warranty Period for each such vehicle (all based on the original date of purchase for each such vehicle), during which a free valve adjustment and Replacement Starter related to the AIS No-Restart condition may be performed for a 2016 model year Honda Pilot, Acura TLX, and Acura MDX under the Service Bulletin at an Authorized Acura Dealership or Authorized Honda Dealership.

**21)** **Final Approval Hearing**. "Final Approval Hearing" means the hearing at which the Court will consider and finally decide whether to enter the Final Approval Order and/or Final Approval Order on Fees.

**22)** **Final Approval Order**. "Final Approval Order" means the order of the Court that approves this Settlement Agreement and makes such other final rulings as are contemplated by this Settlement Agreement.

**23)** **Final Approval Order on Fees**. "Final Approval Order on Fees" means any order of the Court awarding Class Counsels' Fees and Expenses.

**24)** **Litigation**. "Litigation" means the Action as defined above.

**25)** **Mailed Notice**. "Mailed Notice" means the Class Notice sent by U.S. Mail.

13

26) **Notice Administrator.** "Notice Administrator" means JND Legal Administration, a class action administrator that American Honda Motor Co., Inc. will retain to disseminate the Class Notice (including the "CAFA Notice" (as defined herein)) and handle other tasks as defined herein.

27) **Notice Plan.** "Notice Plan" means sending the Class Notice via first class mail, postage prepaid, and shall also include email notices/reminders where email addresses are known or available for Settlement Class Members.

28) **Objection Deadline**. "Objection Deadline" means thirty-five (35) days from the Class Notice Date, or a date otherwise ordered by the Court, for members of the Settlement Class to object to the Settlement Agreement's terms or Class Counsels' Fees and Expenses, and to submit any required statements, proof, or other materials and/or argument.

29) **Out-Of-Pocket Costs.** "Out-Of-Pocket Costs" means all expenses that a Settlement Class Member (1) has reasonably incurred relating to AIS No-Restart, consisting of expenses for the part and labor costs associated with starter replacement, starter relay replacement, or valve adjustment available for reimbursement under the Warranty Extension, as well as towing expenses (if any) due to AIS No-Restart issues, or (2) reasonably may incur in the future (during the Warranty Period or the Extended Claim Period, as applicable) due to AIS No-Restart issues, and that are not otherwise covered by the Warranty Period or Extended Claim Period (for example, towing expenses due to no-restart issues are included; battery replacement expenses/loaner car costs, etc. are not), as applicable.

30)     **Parties**. "Parties" means the Plaintiffs and Defendant.

31)     **Plaintiffs**. "Plaintiffs" means the Settlement Class Representatives as defined below.

32)     **Preliminary Approval Order**. "Preliminary Approval Order" means the order of the Court preliminarily approving this Settlement Agreement.

33)     **Released Claims**. "Released Claims" means the claims released by this Settlement Agreement, as set forth in Section VIII and its related subsections.

34)     **Released Parties**. "Released Parties" means AHM, its parent, subsidiaries, affiliates and related entities and all of its past and present directors, officers, employees, partners, principals, agents, and each of their predecessors, successors, parents, subsidiaries, divisions, joint ventures, attorneys, insurers, reinsurers, assigns, related or affiliated entities, Authorized Acura Dealerships, Authorized Honda Dealerships, distributors, suppliers, and any members of their immediate families, and any trust for which any of them are trustees, settlers, or beneficiaries.

35)     **Request for Exclusion**. "Request for Exclusion" means a request by any Class Member for exclusion from the Settlement.

36)     **Required Documentation**. "Required Documentation" means documents required for a Claim and includes (1) a completed Claim Form, and (2) proof of payment for Out-of-Pocket Costs actually paid by a Settlement Class Member such as receipts, cancelled checks, credit card statements, invoices, costs verifiable, etc., as described in the Claim Form.

37)     **Service Award**. "Service Award" means the amount to be paid to the

15

Settlement Class Representatives to compensate them for the time and effort on behalf of the Class, as approved or otherwise awarded by the Court.

38) **Service Bulletin.** "Service Bulletin" means Acura service bulletins 22-009 (2015-2020 TLX) and 23-002 (2016-2020 MDX), and Honda service bulletin 23-009 (2019-21 Passport; 2016-2021 Pilot; 2020-21 Ridgeline), individually or collectively, which Defendant will amend to remove all language reflecting or related to AIS No-Restart symptom verification or duplication as a condition to receiving the repair procedure described therein.

39) **Settlement**. "Settlement" and "Settlement Agreement" means this agreement by the Parties to resolve this Litigation, the terms of which have been memorialized herein.

40) **Settlement Administrator.** "Settlement Administrator" means AHM.

41) **Settlement Class.** "Settlement Class" means all individuals or legal entities who own or owned, purchase(d) or lease(d) Class Vehicles in any of the fifty States Excluded from the Class are (1) AHM, its related entities, parent companies, subsidiaries and affiliates, and their respective officers, directors, and employees; (2) insurers or financier of the Class Vehicles; (3) all persons and/or entities claiming to be subrogated to the rights of Class Members; (4) issuers or providers of extended vehicle warranties or extended service contracts; (5) individuals and/or entities who validly and timely opt-out of the Settlement; (6) individuals or businesses that have purchased Class Vehicles previously deemed a total loss (i.e. salvage) (subject to verification through Carfax or other means); (7) current and former owners of a Class Vehicle who previously have released all

claims against AHM with respect to the issues raised in the Litigation; and (8) any judge
to whom this matter is assigned, and his or her immediate family (spouse, domestic partner,
or children).

42)     **Settlement Class Members**. "Settlement Class Members" have the same
meaning as "Settlement Class," as set forth in ¶ 42 above.

43)     **Settlement Class Representatives**. "Class Representatives" means
plaintiffs Kevin Bishop, Janice Stewart, Brandon Derry, Jeff Kaminski, Devron Elliot,
Marilyn Thomas, Daniel Rock, Antoinette Lanus, Sirous Pourjafar, Melissa Howell, David
Jew, Sharon Marie Johnson, Liz Simpson, Hamid Balooki, Malik Barrett, Sean Crary,
Sadia Durrani, Abby O'Neill, Latasha Ransome, and Ali Qureshi.

44)     **Replacement Starter.** "Replacement Starter" means an "A53" starter
motor assembly.

45)     **Warranty Period**. "Warranty Period" means the warranty coverage
extension for valve adjustment and starter replacement related to AIS No-Restart for 10
years from the original date of purchase (first retail sale or lease of the Class Vehicle as a
"new" vehicle) with no mileage limitation, as announced in the Service Bulletins.

## II.    <u>REQUIRED EVENTS</u>

Promptly after execution of this Settlement Agreement by all Parties:

A.     Class Counsel and Defendant's Counsel shall take all reasonable and
necessary steps to obtain entry and approval of the Preliminary Approval Order and obtain
entry of the Final Approval Order.  By stipulation of the Parties and Court order, Plaintiffs
have filed the 5CAC that defines the class consistent with the terms of this Settlement

17

Agreement.  The Parties agree that since the 5CAC was filed to conform to the Settlement

Agreement as agreed upon which created a nationwide class action for all affected Class

Members, AHM need not file a response (answer) to the 5CAC.  The Parties further agree

that in not responding to the 5CAC as set forth herein, AHM will not be deemed to have

waived any defense, admitted any fact, or have otherwise defaulted or effected a waiver in

any manner.

      B.    In the event that the Court fails to issue the Preliminary Approval Order, or

fails to issue the Final Approval Order, the Parties agree to use their best efforts, consistent

with this Settlement Agreement, to do all things necessary to cure any deficiency(s)

identified by the Court to effectuate settlement.  If, despite their best efforts, the Parties

cannot cure said defects, the Settlement Agreement is voidable with each party returning

to their respective pre-settlement posture and without prejudice or waiver to any party's

pre-settlement position on any legal or factual issue.

      C.    The Parties acknowledge that prompt approval, consummation, and

implementation of the Settlement set forth in this Settlement Agreement are essential and

in the interest of all Parties and Settlement Class Members.  The Parties shall cooperate

with each other in good faith to carry out the purposes of and to fully effectuate this

Settlement Agreement, shall promptly perform their respective obligations fully hereunder,

and shall promptly take any and all actions and execute and deliver any and all additional

documents and all other materials and/or information reasonably necessary or appropriate

to carry out the terms of this Settlement Agreement and the transactions contemplated

hereby.

D.      Upon Entry of the Final Approval Order, this Action shall be dismissed, on its merits and with prejudice, subject to the continuing jurisdiction of the Court. The Final Approval Order also will enjoin the prosecution of any litigation or class action by Settlement Class Representatives or any Settlement Class Member related to or arising from any Released Claims herein.

## III.   SETTLEMENT TERMS

1)      **Amendment to Service Bulletin.**  Not later than fourteen (14) days of the issuance of a Preliminary Approval Order, AHM will disseminate amended Service Bulletins to all Authorized Honda Dealerships and Authorized Acura Dealerships with a modified "Inspection Procedure" section for Acura Service Bulletins 22-009 (2015-2020 TLX) and 23-002 (2016-2020 MDX), and Honda Service Bulletin 23-009 (2019-21 Passport; 2016-2021 Pilot; 2020-21 Ridgeline) which removes all language in these bulletins reflecting or related to AIS No-Restart symptom verification or duplication as a condition to receiving the repair procedure described therein. The Parties will cooperate to agree on language for the amended Service Bulletins that will remove AIS No-Restart verification language in the Service Bulletin, as exemplified below.

a. *Acura Service Bulletin 22-009*

**Inspection Procedure**

Does 22-008 Product Update: 2015-20 TLX PGM-FI Idle Stop Software Update apply to the VIN?

**Yes** – Confirm 22-008 Product Update: 2015-20 TLX PGM-FI Idle Stop Software Update is closed by checking VIN inquiry.

- If closed, ~~verify the symptom, if present,~~ proceed to the repair procedure.
- If open, perform 22-008 Product Update: 2015-20 TLX PGM-FI Idle Stop Software Update.

**No** – ~~Verify the symptom, if present,~~ Proceed to the repair procedure.

b. *Acura Service Bulletin 23-002*

**Inspection Procedure**

Does 23-001 Product Update: PGM-FI Idle Stop Software Update apply to the VIN?

**Yes** – Confirm 23-001 Product Update: PGM-FI Idle Stop Software Update is closed by checking VIN inquiry.

- If closed, ~~verify the symptom, if present,~~ proceed to the repair procedure.
- If open, perform 23-001 Product Update: PGM-FI Idle Stop Software Update.

**No** – ~~Verify the symptom, if present,~~ Proceed to the repair procedure.

c. *Honda Service Bulletin 23-009*

**Inspection Procedure**

Does 23-008 Product Update: PGM-FI Idle Stop Software Update apply to the VIN?

**Yes** – Confirm 23-008 Product Update: PGM-FI Idle Stop Software Update is closed by checking VIN inquiry.

- If closed, ~~verify the symptom, if present,~~ proceed to the repair procedure.

- If open, do 23-008 Product Update: PGM-FI Idle Stop Software Update.

**No** – ~~Verify the symptom, if present,~~ Proceed to the repair procedure.

2) **Extended Claim Period.** Not later than fourteen (14) days of the issuance of a Preliminary Approval Order, and without a Final Approval Order, AHM will implement the Extended Claim Period for 2015 and 2016 model year Class Vehicles, inform Authorized Honda Dealerships and Authorized Acura Dealerships of the Extended Claim Period, and will provide notice of both the creation and implementation of the Extended Claim Period to owners of the affected Class Vehicles through the Class Notice.

3) **Out-of-Pocket Costs.** AHM will reimburse Out-of-Pocket Costs, on a claims-made basis, as follows:

   a. For Out-of-Pocket Costs not previously reimbursed or reimbursable under the Warranty Extensions, but incurred prior to the Class Notice Date, Class Members must submit a Claim, with Required Documentation, by the Claims Deadline either electronically or U.S. Mail. Payment for such Claims will be made after Claims Processing, within sixty (60) days of the Effective Date of the Final Approval Order. Class Members who submit timely and valid Claims for Out-of-Pocket Costs incurred prior to the Class Notice Date will be eligible for reimbursement even if they no longer own the Class Vehicle.

   b. For Out-of-Pocket Costs incurred after the Class Notice Date, Settlement Class Members must submit a Claim with Required Documentation, either electronically or U.S. Mail, not later than sixty (60) days after such Out-of-

21

Pocket Costs are incurred. Payment for such Claims will be made after Claims Processing, by the later of sixty (60) days of the Effective Date of the Final Approval Order or sixty (60) days after such post-Class Notice Claims are submitted (if submitted after Final Approval). After the Class Notice Date, all AIS repairs must be performed as warranty repairs by an Authorized Acura Dealership or Authorized Honda Dealership pursuant to the terms of the Warranty Period or Extended Claims Period, as applicable. Part and labor costs paid by Class Members for repairs done by repair facilities other than Authorized Acura Dealerships or Authorized Honda Dealerships after the Class Notice Date are not eligible for reimbursement as Out-of-Pocket Costs.

## IV.    CLASS NOTICE AND RELATED PROVISIONS

A.    Class Notice will be accomplished consistent with the Notice Plan, all as approved by the Court, and consistent with the requirements of Fed. R. Civ. P. 23, the Due Process Clause of the United States Constitution, and all other applicable statutes, laws and rules, including those described below, as well as those in the Preliminary Approval Order, the Notice Plan (attached hereto as Exhibit 4), and this Settlement Agreement. Implementation of the Notice Plan will commence on the date of entry of the Preliminary Approval Order. The Notice Plan shall be carried out in substantially the manner provided in this Settlement Agreement.[1] The costs of the Notice Plan, including disseminating the

---

[1] Prior to the preliminary approval of this Settlement, the Parties reserve the right to modify the Class Notice to the extent any modifications do not substantively change the contents or effect of the Class Notice. If so modified, the modified draft of the Class Notice can and will be substituted in as an exhibit to this Settlement Agreement in lieu of the Class

notice and otherwise implementing the notice specified in this of this Settlement Agreement, shall be paid by AHM.

B.    **Mailed Notice**: Consistent with the timeline specified in the Preliminary Approval Order, the Notice Administrator shall send the Mailed Notice substantially in the form attached hereto as Exhibit 2, by U.S. Mail, proper postage prepaid, to the current and former registered owners and lessees of Class Vehicles, as identified by data provided by Experian or similar vendor(s). The Mailed Notice shall inform those persons of how to obtain the Long Form Notice via the Settlement Website, via regular mail or via a toll-free telephone number, pursuant to Sections IV through V, below.  In addition, the Notice Administrator shall: (a) re-mail any notices returned by the United States Postal Service with a forwarding address; (b) by itself or using one or more address research firms, as soon as practicable following receipt of any returned notices that do not include a forwarding address, research such returned mail for better addresses and promptly mail copies of the applicable notice to any updated addresses so found.

C.    For purposes of identifying the requisite names and addresses, upon entry of the Preliminary Approval Order, the Notice Administrator shall be authorized to the names and most current addresses of Class Members through state agencies. Because some states require a prior court order before vehicle owner information can be released, such information may not be available until after the Preliminary Approval Order is entered.

D.    Prior to mailing Class Notice, the Notice Administrator shall conduct an

Notice Exhibits attached at the time of execution.

address search through the United States Postal Service's National Change of Address
database to update the address information for Class Members. For each Class Notice that
is returned as undeliverable, the Notice Administrator shall use its best efforts to obtain a
deliverable address.

E.      The Parties agree to use their best efforts to comply with the time schedule
set forth in this section, but agree to work cooperatively in extending this time limit, if
reasonably necessary, to obtain the best practicable Settlement Class Member contact
information prior to the date of the mailing of Class Notice.

F.      **Long Form Notice.** The Long Form Notice shall be in a form substantially
similar to the document attached to this Settlement Agreement as Exhibit 3, and shall
contain a plain and concise description of the nature of the Action, the history of the Action,
the preliminary certification of the Settlement Class for settlement purposes, and the
Settlement Agreement, including information on the identity of Settlement Class Members,
how the Settlement Agreement would provide relief to the Settlement Class and Settlement
Class Members, the Release under the Settlement Agreement, and other relevant terms and
conditions.

G.      **Email Notice.** Following the Court granting preliminary approval of this
Settlement, the Notice Administrator shall provide email notice to all Settlement Class
Members for which an email address is available, including a hyperlink to the dedicated
Settlement Website discussed below where Settlement Class Members can find electronic
versions of the Mailed Notice, Long Form Notice, and Claim Form.

H.      **Settlement Website.** AHM will, as Settlement Administrator, establish and

maintain a Settlement Website until December 31, 2028 that will: (1) inform Settlement Class Members of the terms of this Settlement Agreement, their rights, dates and deadlines and related information; (2) provide instructions on how to submit a claim by U.S. Mail or electronically; (3) provide instructions on how to contact Class Counsel for assistance; (4) contain in .pdf format, materials agreed upon by the Parties and/or required by the Court, including, but not limited to, a copy of the Class Notice, the Long Form Notice, in English and Spanish, the Claim Form, and the Settlement Agreement; (5) contain a copy of the Service Bulletins, and (6) contain other information AHM and Class Counsel mutually agree is relevant for dissemination to Class Members regarding the Settlement. The Settlement Website shall also include Frequently Asked Questions and Answers, Court documents that may be of interest to most Settlement Class Members, and will also maintain a toll-free number providing Class Members assistance with Claims, and answers to frequently asked questions.

I.      Costs for all Class Notice, maintaining a Settlement Website, sending required notices to governmental entities (if any), maintaining a toll-free number to answer settlement questions, and all Notice Administrator and Settlement Administrator costs are to be paid by AHM.

J.      The Parties agree that any publications by Class Counsel (through websites, website postings, chat rooms, media interviews, etc.) or any other communications by the Parties regarding this Settlement will be consistent with the Settlement Agreement, Class Notice, Claim Form, Preliminary Approval Order, Final Approval Order and any press release that may be mutually prepared and agreed upon by the Parties. Nothing in this

paragraph shall limit (1) Class Counsel's ability to communicate with the Class Representatives, Settlement Class Members or the Court, and (2) AHM's ability to communicate with its customers, dealers, or the Court.

## V.  **NOTICE / SETTLEMENT ADMINISTRATORS**

A.    The Notice Administrator will be responsible for the following:

(1) In compliance with the attorney general notification provision of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, cause notice of this proposed settlement to be sent to the Attorney General of the United States, and the attorneys general of each state in which a Settlement Class Member resides ("CAFA Notice"); and

(2) disseminate the Class Notice, pursuant to the Notice Plan and this Settlement Agreement, as approved by the Court.

B.     The Settlement Administrator will be responsible for Claims Processing and for collecting any "opt out" requests and/or objections and transmitting them to Class Counsel and Defendant's Counsel.

C.     Class Members who submit Claims herein that are incomplete (e.g. lack Required Documentation other required information) or are not approved for payment will promptly receive by first-class mail a written explanation explaining why a Claim has been denied, or, if applicable, providing instruction on steps the individual can take to cure deficiencies in a Claim. The Claimant receiving notice of an incomplete Claim will be allowed sixty (60) days to submit Required Documentation and other information necessary to cure the deficiencies.  If corrective information is not provided within sixty

26

(60) days of a deficiency notice, the Claim will be denied.

D.      On a bi-weekly basis prior to the final approval hearing and on reasonable request after the final approval hearing, the Settlement Administrator will provide to Class Counsel summary information concerning the number of Claims made, number of Claims returned for incompleteness, and number of Claims pending in Claim Processing, number of Claims validated, and the total amount of reimbursement payments to be made on validated Claims.

E.      In any instance that a Claim is finally denied and the Claimant disputes the denial, such final denials will be forwarded to Class Counsel. The parties to the dispute, through their respective counsel, will engage in good faith efforts to resolve the dispute as to that Claim (each party to bear his, her or its own respective costs for such efforts). If counsel are unable to resolve the dispute, the Claimant may then appeal the denial of the Claim to the National Center for Dispute Settlement ("NCDS"), which is a third-party neutral, provided that any such appeal must be filed within sixty (60) days of final denial by the Settlement Administrator and any decision by the NCDS will be final and binding upon the parties to the dispute.  The appeal to the NCDS will be resolved without a formal hearing or trial process. AHM will pay any cost charged by the NCDS for resolving the appeal, however, the parties to the dispute shall be responsible for paying their respective attorneys' fees and other expenses if they decide to retain counsel.

F.      No later than ten (10) days prior to the date Plaintiff's Motion for Final Approval is to be filed, the Notice Administrator and/or Settlement Administrator (as applicable) shall provide Class Counsel with an affidavit or declaration to be filed with

the Court along with the papers submitted by Class Counsel in support of the Final

Approval Motion, attesting the Class Notice was disseminated in a manner consistent with

the terms of this Settlement Agreement, or those otherwise required by the Court; a report

containing the summary information concerning Claims as set forth in Paragraph V(D),

above, and setting forth the amount of the reimbursements claimed by Class Members in

Claims for Out-of-Pocket Costs. The Notice Administrator and/or Settlement

Administrator, as applicable, shall supplement this report upon request by Class Counsel,

in the event the Final Approval Hearing is continued or adjourned, or as otherwise

necessary.

G.    All approved Claims will be paid by AHM by the deadlines set forth in

Sections III(3)(a) and III(3)(b) herein through separate checks sent directly to each

claimant. Checks must be cashed within one hundred eighty (180) days from the date of

issuance, as stated on the face of the check. If the checks remain uncashed or expire, they

can be reissued to the claimant upon request.

## VI.    REQUESTS FOR EXCLUSION BY CLASS MEMBERS

A.    Any Settlement Class Member who wishes to be excluded from the

Settlement Class must submit a Request for Exclusion to the Settlement Administrator, via

U.S. mail at the address provided in the Class Notice or electronically on the Settlement

Website. Any Request for Exclusion must be postmarked or submitted electronically (via

electronic mail) no later than thirty-five (35) days after the Class Notice Date or such other

date specified in the Court's Preliminary Approval Order. The Request for Exclusion must

include:

28

1. The case name and number of the Action;

2. The Settlement Class Member's full name, current residential address, mailing address (if different), telephone number, and email address;

3. An explanation of the basis upon which the excluding Settlement Class Member claims to be a Class Member, including the make, model, model year, VIN(s), and mileage of his/her/its Class Vehicle(s) and the approximate date(s) of purchase or lease;

4. A request specifically stating his/her/its desire to be excluded from the Settlement and the Class; and

5.  The excluding Class Member's dated, handwritten signature or an electronic signature (if submitting via the Settlement Website), as the case may be. An attorney's signature is not sufficient.

Failure to comply with these requirements and to timely submit the Request for Exclusion will result in the Settlement Class Member being bound by the terms of the Settlement and by all subsequent proceedings, orders, and judgments, including, but not limited to, the Release, Final Judgment, and Final Order in the Action, even if he, she, or it has litigation pending or subsequently initiates litigation against AHM relating to the claims and transactions released in the Action.  Any Settlement Class Member who submits a timely Request for Exclusion may not file an objection to the Settlement and shall be deemed to have waived any rights or benefits under this Settlement Agreement.

B.      The Settlement Administrator shall collect and transmit to Class Counsel and Defendant's Counsel the names and contact information of Settlement Class Members who

submit a Request for Exclusion from the proposed Settlement, along with copies of the Requests for Exclusion submitted.

C.    The Parties shall jointly report the names of all individuals who have submitted a Request for Exclusion to the Court no less than ten (10) days prior to the Final Approval Hearing.

## VII.  **OBJECTIONS BY SETTLEMENT CLASS MEMBERS**

A.    Any Settlement Class Member who has not excluded themselves pursuant to Section VI and wishes to object to the Settlement Agreement, the requested award of Attorneys' Fees and Costs, and/or the requested Class Representative Service Awards must (1) file their written objection electronically with the Court on or before the Objection Deadline or such other date specified in the Court's Preliminary Approval Order, or (2) mail their objection to the Clerk of the Court and the Settlement Administrator with a postmark dated on or before the Objection Deadline or such other date specified in the Court's Preliminary Approval Order. For an objection to be considered by the Court, the objection must be received by the Court or Settlement Administrator on or before the deadline established by the Court for submitting objections. For an objection to be considered by the Court, the objection must also set forth:

1.    The case name and number of the Action;

2.    The objector's full name, current residential address, mailing address (if different), telephone number, and email address;

3.    An explanation of the basis upon which the objector claims to be a Settlement Class Member, including the make, model, model year, VIN(s), and mileage of

30

the Class Vehicle(s), and whether the Class Vehicle is currently owned or currently leased by the Settlement Class Member;

4. Documentation sufficient to establish membership in the Settlement Class;

5. Whether the objection applies only to the objector, to a specific subset of the Settlement Class or to the entire Settlement Class, and all grounds for the objection, accompanied by any legal support for the objection, and any documents or other evidence the objector believes supports the objection;

6. The number of times the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection to this Settlement, the caption and case number of each case in which the objector has made such objection and the caption and case number of any related appeal, and a copy of any orders related to or ruling upon the objector's prior such objections that were issued by the trial and appellate courts in each listed case;

7. The full name, telephone number, mailing address, and e-mail address of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement Agreement and/or the request for Attorneys' Fees and Costs;

8. The identity of all counsel representing the objector who will appear at the Final Approval Hearing;

9. The number of times the objector's counsel has objected to a class action settlement within the five years preceding the date that they have filed the objection,

and the caption and case number of each case in which objector's counsel has made such objection and the caption and case number of any related appeal;

10. If the Settlement Class Member or his or her counsel have not made any such prior objection, the Settlement Class Member shall affirmatively so state in the written materials provided with the objection;

11. A list of all persons who will be called to testify at the Final Approval Hearing in support of the objection;

12. A statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

13. The objector's original signature and date of signature. Each objection must be personally signed by the objector (an electronic signature or attorney's signature is not sufficient).

B. Any Settlement Class Member who fails to comply with the provisions of Section VII.A, above, shall be deemed to have waived and forfeited any and all rights he or she may have to appear separately and object, whether by a subsequent objection, intervention, appeal, or any other process, and shall be bound by all the terms of this Settlement Agreement and by all proceedings, orders and judgments, including, but not limited to, the Release, the Final Approval Order, and the Final Judgment in the Action. The exclusive means for any challenge to the Settlement Agreement shall be through the provisions of this Section VII.A. Without limiting the foregoing, any challenge to the Settlement Agreement, Final Approval Order, or Final Judgment shall be pursuant to appeal under the Federal Rules of Appellate Procedure and not through collateral

proceedings. Settlement Class Members may not both object and request exclusion.

C.      Any Settlement Class Member who objects to the Settlement Agreement shall be entitled to all the benefits of the Settlement Agreement if the Settlement Agreement and the terms contained herein are approved, as long as the objecting Settlement Class Member complies with all requirements of this Settlement Agreement applicable to Settlement Class Members.

D.      The agreed-upon procedures and requirements for the submission of objections, as specified in Section VII.A, above, in connection with the Final Approval Hearing are intended to ensure the efficient administration of justice and the orderly presentation of any Settlement Class Member's objection to the Settlement Agreement, in accordance with the due process rights of all Settlement Class Members.

E.      Upon receipt of any objections by Settlement Class Members, the Settlement Administrator shall collect and transmit to Class Counsel and Defendant's Counsel the names and contact information of Class Members who object to the proposed Settlement, along with copies of the objections and any related documents.

F.      Class Counsel agrees that it will be solely responsible for defending the Court's Final Approval Order or Final Approval Order on Fees in the event of an appeal. AHM will make a filing either joining and/or not opposing Class Counsel's defense of the Final Approval Order.  Any fees and/or costs incurred by Class Counsel in appeals from a Final Approval Order or any Final Approval Order on Fees by persons/entities who are not signatories to this Settlement Agreement, including fees and/or costs incurred to settle any claims by objectors, are the sole responsibility of Class Counsel.  Class Counsel may not

seek to recover such fees and/or costs from AHM.  The signatories to the Settlement Agreement otherwise each reserve all their rights.

## VIII.  RELEASE, DISMISSAL OF ACTION, AND JURISDICTION OF COURT

A.      By this Settlement Agreement and the following Release, Defendant and Released Parties are released from any and all claims or causes of action, including unknown claims, under the laws of any jurisdiction, including federal law, state law, and common law, whether at law or equity (including any claims under the "lemon laws" of the fifty (50) U.S. states and the Magnusson-Moss Warranty Act), that arise out of, relate to, or in any way concern AIS No-Restart in the Class Vehicles, except as set forth in Paragraph VIII(C) below. Without assuming the Release given by this Settlement Agreement is a general release, Plaintiffs and Class Members expressly waive and relinquish all such claims or causes of action to the fullest extent permitted by law. Plaintiffs and the Class Members recognize that, even if they later discover facts in addition to or different from those which they now know or believe to be true, they nevertheless agree that, upon entry of the Final Approval Order and accompanying judgment, Plaintiffs and the Class Members fully, finally, and forever settle and release any and all of the Released Claims. The Parties acknowledge the foregoing waiver and release was bargained for and is a material element of the Settlement Agreement.

B.      The Plaintiffs and Class Members expressly waive and relinquish, to the fullest extent permitted by law, the provisions, rights, and benefits of section 1542 of the California Civil Code, and any similar federal or state law.  Section 1542 of the California

34

Civil Code provides: "A general release does not extend to claims which the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her would have materially affected his or her settlement with the released party."

C.     This Settlement Agreement does not affect the rights of Settlement Class Members who timely and properly request exclusion from the Settlement Agreement. The Settlement Agreement does not release claims for death, personal injury, or damage to tangible property other than to the Class Vehicles, or claims for subrogation.

D.     Notwithstanding the foregoing, the Release does not include any claims that other current plaintiffs have brought in this Action who are not a party to this Agreement, including but not limited to the claims of individual Plaintiffs Drew Taranto and Etinosa O'Basuyi.

E.     Upon issuance of the Final Approval Order: (i) the Settlement Agreement shall be the exclusive remedy for any and all Settlement Class Members, except those who have opted out in accordance with the terms and provisions hereof; (ii) Defendant and Released Parties shall not be subject to liability or expense of any kind to any Settlement Class Member(s) for reasons related to the Litigation except as set forth herein; and (iii) Settlement Class Members shall be permanently barred from initiating, asserting, or prosecuting any and all Released Claims against Defendant and Released Parties.

## IX.    ADMINISTRATION, ATTORNEYS' FEES AND EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARDS

A.     All expenses incurred in administering this Settlement Agreement,

including, without limitation, costs incurred by the Class, the Notice Administrator and the Settlement Administrator shall be paid by AHM, subject to the limitations contained herein and approval of the Court.

B.      Plaintiffs will move the Court for an award of Class Counsel Fees and Expenses and Class Representative Service Awards, which AHM shall pay separate and apart from benefits made available under the Settlement.  AHM retains all rights to oppose Plaintiffs' request for Class Counsel Fees and Expenses and the amount of Class Representative Service Awards on all available legal and factual grounds.

## X.      REPRESENTATIONS, WARRANTIES, AND COVENANTS

A.      Class Counsel, who are signatories hereof, represent and warrant that they have the authority, on behalf of Plaintiffs, to execute, deliver, and perform this Settlement Agreement and to consummate all of the transactions contemplated hereby. This Settlement Agreement has been duly and validly executed and delivered by Class Counsel and Plaintiffs and constitutes their legal, valid, and binding obligation.

B.      AHM, through its undersigned attorneys, represents, and warrants that it has the authority to execute, deliver, and perform this Settlement Agreement and to consummate the transactions contemplated hereby. The execution, delivery, and performance by AHM of this Settlement Agreement and the consummation by it of the actions contemplated hereby have been duly authorized by all necessary corporate action on the part of AHM. This Settlement Agreement has been duly and validly executed and delivered by AHM and constitutes its legal, valid, and binding obligation.

## XI.   **MISCELLANEOUS PROVISIONS**

A.     This Settlement Agreement is not to be used in evidence (except in connection with obtaining approval of this Settlement Agreement and enforcing its terms) and shall not at any time be construed or deemed to be any admission or concession by AHM with respect to any alleged wrongdoing, fault, or omission of any kind whatsoever, regardless of whether or not this Settlement Agreement results in entry of a Final Approval Order as contemplated herein.   AHM specifically denies all of the allegations made in connection with the Litigation or the Complaint. Neither this Settlement Agreement nor any class certification pursuant to it shall constitute, in this or in any other proceeding, an admission by AHM, or evidence or a finding of any kind, that any requirement for class certification is satisfied with respect to the Litigation, or any other litigation, except for the limited purpose of settlement pursuant to this Settlement Agreement.   This Settlement Agreement also is made with the Parties' express understanding and agreement that (a) under applicable laws, it is appropriate that a nationwide class be certified for settlement purposes; (b) AHM contests and denies that any class, including the proposed Settlement Class, is suitable for certification as a class under the law of any jurisdiction, other than solely for the purposes of this Settlement Agreement; and (c) notwithstanding any other provisions of this Settlement Agreement, all actions and proceedings pursuant to it shall be consistent with the foregoing. This provision shall survive the expiration or voiding of the Settlement Agreement.

B.     This Settlement Agreement is entered into only for purposes of Settlement. In the event that the Final Approval Order is not entered or a Final Approval

Order is subsequently reversed by an appeal, the Parties agree to use their best efforts to

cure any defect(s) identified by the Court and to fully effectuate the purposes and intent of

this Settlement Agreement. If, despite their best efforts, the Parties cannot cure said defects,

this Settlement Agreement, including any releases or dismissals hereunder, is canceled, and

no term or condition of this Settlement Agreement, or any draft thereof, or of the

discussion, negotiation, documentation or other part or aspect of the Parties' settlement

discussions, shall have any effect, nor shall any such matter be admissible in evidence for

any purpose, or used for any purposes whatsoever in the Litigation, and all Parties shall be

restored to their prior rights and positions as if the Settlement Agreement had not been

entered into.

      C.    The Parties agree that AHM may withdraw or terminate this Settlement

Agreement prior to the Final Approval Hearing if more than three percent (3%) of Class

Members have submitted valid and timely Requests for Exclusion. For purposes of

determining whether the conditions for withdrawal or termination of the Settlement

Agreement have occurred, copies of all Requests for Exclusion timely received, together

with copies of all written revocations of Requests for Exclusion, shall be delivered to the

Defendant's Counsel within seven (7) days of receipt by the Settlement Administrator, but,

in no event, later than ten (10) Court days before the Final Approval Hearing. Moreover,

the Settlement Administrator will furnish a report concerning Requests for Exclusion to

Class Counsel within the same time frame. In the event of a withdrawal from this

Settlement Agreement in accordance with the terms of this paragraph, this Settlement

Agreement shall become null and void and of no further force and effect.

D.      The headings of the sections and paragraphs of this Settlement Agreement are included for convenience only and shall not be deemed to constitute part of this Settlement Agreement or to affect its construction.

E.      Capitalized words, terms and phrases are used as defined in Section I, above.

F.      This Settlement Agreement may not be modified or amended except in writing and signed by all of the Parties.

G.      This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

H.      Except as otherwise provided in this Settlement Agreement, each party to this Settlement Agreement shall bear his, her, or its own costs of the Litigation.

I.      The Parties to this Settlement Agreement reserve the right, by agreement and subject to the Court's approval, to grant any reasonable extensions of time that might be necessary to carry out any of the provisions of this Settlement Agreement, modify or supplement any notice contemplated hereunder, as well as to correct any inadvertent mistakes or typographical errors contained in any of the Settlement papers.

J.      The administration and consummation of the Settlement as embodied in this Settlement Agreement shall be under the authority of the Court. The Court shall retain jurisdiction to protect, preserve, and implement the Settlement Agreement, including, but not limited to, the release. The Court expressly retains jurisdiction to enter such further orders as may be necessary or appropriate in administering and implementing the terms and provisions of the Settlement Agreement, including, but not limited to, orders enjoining

39

Class Members from prosecuting claims that are released pursuant to the Settlement Agreement and allowing for discovery related to objectors, if any.

K.     The determination of the terms of, and the drafting of, this Settlement Agreement has been by mutual agreement after negotiation, with consideration by and participation of all Parties and their counsel. Since this Settlement Agreement was drafted with the participation of all Parties and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply. The Parties were represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Settlement Agreement, and there was no disparity in bargaining power among the Parties to this Settlement Agreement.

L.     This Settlement Agreement constitutes the entire, fully integrated agreement among the Parties and cancels and supersedes all prior written and unwritten agreements and understandings pertaining to the Settlement of the Litigation.

M.     The Parties agree that any disputes regarding the meaning of the terms and conditions of this Settlement Agreement, the Parties' rights and obligations under this Settlement Agreement, and/or as to any disagreement regarding the manner in which any issue or dispute arising under this Settlement Agreement should be resolved, shall be submitted to the Court for resolution.

N.     All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided.  In computing any period of time prescribed or allowed by this agreement or by order of the Court, the day of the act, or default, from which the designated period of time begins to run shall not be included.  The last day of the period

so computed shall be included, unless it is a Saturday, a Sunday or a legal holiday, in which event the period shall run until the end of the next day that is not one of the aforementioned days.

O.       Any failure by any of the Parties to insist upon the strict performance by any of the other Parties of any of the provisions of this agreement shall not be deemed a waiver of any provision of this agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions herein.

P.       All notices to the Parties or counsel required by this Settlement Agreement shall be made in writing and communicated by electronic and regular mail to the following addresses (unless one of the Parties subsequently designates one or more other designees):

For Class Counsel:

H. Clay Barnett, III
Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.
272 Commerce Street
Montgomery, AL 36104
(334) 269-2343
clay.barnett@beasleyallen.com

Adam J. Levitt
DiCello Levitt LLP
Ten North Dearborn Street, Sixth Floor
Chicago, IL 60602
(312) 214-7900
alevitt@dicellolevitt.com

Andrew Trailor
Andrew T. Trailor, P.A.
Marcus Centre

For AHM:

Eric Y. Kizirian, Esq.
Lewis Brisbois Bisgaard & Smith, LLP
633. W. 5th Street, Suite 4000
Los Angeles, California 90071
(213) 250-1800 (Telephone)
Eric.kizirian@lewisbrisbois.com

41

9990 Southwest 77thh Avenue, PH 12
(305) 668-6090
andrew@attlawpa.com

IN WITNESS WHEREOF, Plaintiffs and AHM, by and through their respective

counsel, have executed this Settlement Agreement as of the date(s) indicated on the lines

below.

**DICELLO LEVITT LLP**

Dated: _5/12/25_                                  _____
                                                                            Adam J. Levitt

**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**

Dated: ___5/12/2025___               _____
                                                                            H. Clay Barnett, III

**ANDREW T. TRAILOR, P.A.**

Dated: _____5/12/25_____          /S/ _Andrew S/T Trailor_____

*Class Counsel*

Dated:_____          _____
                                                                            As the Duly Authorized Corporate
                                                                            Representative of American Honda Motor Co., Inc.

Dated:_____          _____
                                                                            Eric Y. Kizirian
                                                                            Lewis Brisbois Bisgaard & Smith LLP
                                                                            **Attorneys for American Honda Motor Co., Inc.**

9990 Southwest 77thh Avenue, PH 12
(305) 668-6090
andrew@attlawpa.com

IN WITNESS WHEREOF, Plaintiffs and AHM, by and through their respective counsel, have executed this Settlement Agreement as of the date(s) indicated on the lines below.


**DICELLO LEVITT LLP**

Dated:_____        _____
                                              Adam J. Levitt

**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**

Dated:_____        _____
                                              H. Clay Barnett, III

**ANDREW T. TRAILOR, P.A.**

Dated:_____        _____
                                              Andrew T. Trailor

*Class Counsel*


Dated:_____        _____
                                              As the Duly Authorized Corporate
                                              Representative of American Honda Motor Co., Inc.

Dated: 5/12/2025____          _____
                                              Eric Y. Kizirian
                                              Lewis Brisbois Bisgaard & Smith LLP
                                              **Attorneys for American Honda Motor Co., Inc.**